# Richmond.

## CITY OF SOUTH NORFOLK v. HARRY K. WOLCOTT.

### December 18, 1924.

1. ATTORNEY AND CLIENT—*Action by Attorney against City for Compensation—Evidence—Minutes of Meeting of Council.*—In an action by an attorney for compensation as associate council against a city when the contract of employment was ambigious the plaintiff not being a party to the proceedings of the council was not bound by them, but the minutes of the meetings were admissible in evidence to show preliminary action on the part of the city council and the authority conferred by them on the city attorney, and also to show their subsequent action with reference to the arrangement made between the city attorney and the plaintiff, as well as the action taken by them on the settlement of the controversy made by the lawyers.

2. ATTORNEY AND CLIENT—*Action by Attorney against City for Compensation—Ambigious Contract—Construction—Parol Evidence—Case at Bar.*—In an action by an attorney against a city for compensation defendant contended that under the contract between the parties plaintiff was only entitled to the contingent fee provided for in the contract in case of services rendered by him in a suit actually instituted and conducted in court, nd not in case of a settlement out of court. The contract consisted of a letter from the city attorney to plaintiff and of one in reply by plaintiff. The city attorney's letter supported defendants construction of the contract, while plaintiff's letter supported his construction; and also referred to conversations between plaintiff and the city attorney after the city attorney had written his letter.

   *Held:* That under the circumstances the trial court was right in admitting oral testimony to clear up any possible ambiguity as to the meaning of the contract and in submitting the effect of the testimony to the jury.

3. CONTRACTS—*Construction—Question of Law or Fact.*—Ordinarily the construction or interpretation of a written contract is solely the function of the court, but it frequently occurs, especially in contracts to be deduced from correspondence and not made by formal documents signed by the parties, that it is necessary to resort to parol evidence to ascertain the exact intention of the parties. In such cases the

meaning of the contract upon the evidence should be submitted to the jury.

4. CONTRACTS—*Construction—Ambiguity—Questions of Law and Fact.*—Where the language of a contract is not clear and unambiguous, a resort to extrinsic evidence is necessary. If the situation is such that fair-minded men might reasonably draw different conclusions therefrom, then the construction of the contract is for the jury under proper instructions from the court, even though the evidence be not conflicting.

5. ATTORNEY AND CLIENT—*Compensation—Evidence—Conversations between the Parties.*—In an action by an attorney against a city for compensation when the contract, consisting of letters between the plaintiff and the city attorney, was ambiguous upon the question of whether plaintiff was entitled to a contingent fee only in case of suit conducted in court or whether he was entitled to it upon a settlement between the parties, testimony as to an oral conversation between the plaintiff and city attorney between the dates of the letters was admissible. What passed between the parties at that time was essential to the clearing up of the ambiguity appearing in the two letters.

6. ATTORNEY AND CLIENT—*Action for Compensation—Completion of Contract.*—In an action by an attorney against a city for compensation for services rendered as associate to the city attorney in a controversy between the city and the county, it was contended by defendant that the services to be rendered by plaintiff had not been completed because the final agreement between the city and county had not been signed by the county. The city attorney testified that he did not know whether the final agreement was signed by the county or not, but that it was agreed to. There was no positive evidence that the agreement had not been signed. The original was not produced.

*Held:* That there was sufficient evidence to go to the jury and their finding in favor of the plaintiff concluded the question.

Error to a judgment of the Circuit Court of Norfolk county, in a proceeding by motion for a judgment for money. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Jas. G. Martin & Bro.*, for the plaintiff in error.

*E. R. F. Wells*, for the defendant in error.

CRUMP, P., delivered the opinion of the court.

The defendant in error, Harry K. Wolcott, instituted proceedings by notice of motion against the plaintiff in error, the city of South Norfolk. The parties are referred to in this opinion as plaintiff and defendant according to the positions they occupied in the litigation in the trial court.

In the notice of motion the plaintiff alleged that he had a contract with the defendant for legal services to be rendered by him under which the defendant had promised and agreed to pay him, in addition to a retainer fee of five hundred dollars, five per cent of any amount which was saved to the defendant city out of large claims made against the city by the county of Norfolk. The notice of motion alleged that together with the city attorney of South Norfolk the plaintiff had succeeded in reducing the claims made against the city by an amount of which five per cent was $3,648.44, and therefore he was entitled to judgment for that sum. The defendant denied liability. On the trial by jury a verdict was rendered for the plaintiff for the amount sued for; the motion on the part of the defendant to set aside this verdict was overruled and judgment entered for the plaintiff on the verdict, to which judgment the defendant excepted.

The petition for the writ of error assigns three errors, as follows:

1. The court erred in not setting aside the verdict as contrary to the law and the evidence and as without evidence to support it.

2. The court erred in refusing to grant the instruction asked for by the defendant, shown in bill of exception No. 2.

3. The court erred in allowing in evidence the testimony by the plaintiff as to an oral conversation or oral agreement between him and the city attorney, as the matter had been reduced to a contract in writing.

We will take up first for consideration assignment of error No. 2, to the refusing of an instruction asked for by the defendant on the trial. This instruction is in the following language:

"The court instructs the jury as a matter of law that, construing the written papers in evidence, these papers show that the arrangements as to a $500.00 retainer and a five per cent attorney's fee are for expected legal services in a suit in court which never took place, and the jury must find for the defendant."

In support of this instruction the defendant urges that the agreement as to the fee of the plaintiff was in writing and was a matter of law to be construed by the court on the face of the writing; and it is earnestly contended here by the learned counsel for the defendant city that the contract between the parties, properly construed, did not embrace any contingent payment of five per cent except for services rendered in a suit actually instituted and conducted in court, and that, as the evidence shows, no suit had been brought but the controversy had been adjusted and settled without suit, therefore the plaintiff in the case was not entitled to recover.

The immediate contract between the parties was in writing and consisted of a letter written by the city attorney of South Norfolk to the plaintiff and the reply

on the part of the plaintiff to that letter.    Those two writings are as follows:

"W. L. Devany, Jr.,
"Attorney at law,
"320-322 Arcade Building,
"Norfolk, Virginia.
"January Fourth, 1922.
"Mr. Harry K. Wolcott, attorney at law,
"Seaboard National Bank Building,
"Norfolk, Virginia.
"Dear Sir:
"The council of the city of South Norfolk has instructed me to take such proceedings as may be necessary to protect their interest in the settlement between the county of Norfolk and the city of South Norfolk and the facts to be adjudicated, are as follows:

"(1). Whether the city of South Norfolk will have to pay any part for sinking fund and interest on the bond issue, or the interest when it was taken care of by the income from the Norfolk county and the city of Portsmouth ferries.

"(2). Under the million dollars bond of 1920, $265,-000.00 was appropriated for road purposes in the Washington magisterial district, South Norfolk, at that time, being a part of said district, whether we are entitled to any part of this appropriation, the city having been incorporated in January, 1921.

"(3). What interest, if any, the city of South Norfolk may have in the ferries which are now owned jointly by Norfolk county and the city of Portsmouth.

"I was instructed to retain associate counsel in this case at such fees as may be agreed upon and which I might deem reasonable and fair; should you care to be associated in this matter and would give me an idea

what fee you would expect both as to were we to win the suit or were we to lose the same. If this matter is adjudicated in favor of the city of South Norfolk, we would expect to pay a considerable more fee than if it was decided adversely to their interest.

"Please acknowledge receipt of this letter as I desire the same for my files and that I may file your reply with the council.

"Yours   truly,<br>"W. L. Devany, Jr."

"Wolcott, Wolcott, Lankford & Kear<br>"Counsellors at Law<br>"Seaboard National Bank Building.<br>"Norfolk, Va., January 6, 1922.

"Judge W. L. Devany, Jr.

"City Attorney for the city of South Norfolk, Virginia.

"My Dear Judge:

"Replying to your favor of the fourth instant regarding the controversy between the city of South Norfolk and Norfolk county, and confirming my conversation with you of this date, will say that I will be pleased to be associated with you in the representation of the city of South Norfolk.

"Now, as to the fees, I think that I should receive a cash retainer of five hundred dollars, and that at the end of the controversy, or any litigation growing out of the same, I should have a contingent fee of five per cent of any amount that we are able to save or recover for the city of South Norfolk.  Of course the city of South Norfolk in addition to pay all expenses incurred in connection with the matter.

"This controversy between the city of South Norfolk and Norfolk county is very interesting, and I believe after going over the matter with you as hurriedly as I have, that the city of South Norfolk certainly has an in

terest in the Norfolk and Portsmouth ferries, that the county's income from its interest in the ferries should first be exhausted before there is any call made upon the city of South Norfolk for contribution to either the principal or interest of the bonds issued in connection with the ferries, and that the city of South Norfolk should at once have its proper proportion of the $265,000.00 of the proceeds of the road bond issue assigned to the Washington magisterial district.   And in this last connection, it seems to me that suit should be instituted at once and an injunction secured to keep Washington magisterial district from spending this $265,000.00 with the city of South Norfolk getting no part of it.

"Will be glad to take this matter up further with you at any time, and assuring you that it will be a pleasure to cooperate with you, I am,

"Yours very truly,

"Harry K. Wolcott."

Only three witnesses testified on the trial, viz:   The plaintiff himself, W. L. Devany, Jr., city attorney, and Thomas Black, chairman of the board of supervisors of Norfolk county.   The testimony given by the city attorney and the plaintiff was quite voluminous and covered every possible detail connected with the character of the controversy between the county of Norfolk and the city of South Norfolk, and the character and extent of the services rendered by the plaintiff, Wolcott.   There was very little disagreement in the evidence between these two witnesses and Mr. Black, the witness for the defendant, the latter giving little testimony bearing upon anything else than the character, extent and value of the services rendered by the plaintiff.   None of the members of the council of South Norfolk testified in the case.

The jury having found upon the evidence that the contract was made between the parties; that the benefit in the reduction in the claims made against the defendant city had accrued to the city as contemplated by the contract in an amount entitling the plaintiff to the contingent fee as claimed by him, these matters are no longer open questions unless the court erred in refusing to give the defendant's instruction.

While it appears from the evidence that the plaintiff, before he entered into the contract, had some knowledge of the pending controversy between the county of Norfolk and the city of South Norfolk, it is not shown that he had any knowledge of the intention of the city of South Norfolk to associate him in the matter with the city attorney.

It is insisted by the learned counsel for the defendant city here, as contended for before the trial court, that the written contract consisting of the two letters plainly shows that the agreement to pay five per cent on any amount saved the city was intended to apply only to a suit which was in the minds of the parties and was to be brought, and did not relate to a settlement or adjustment of the controversy without such a suit. The evidence shows that before the contract in question was made there had been some negotiations between the county and the city of South Norfolk which resulted in large claims being made by the county against the city, and it is to be fairly inferred from the testimony that it was regarded by the city attorney, and therefore to a certain extent by the members of the city council of South Norfolk, that a suit would be necessary in order to maintain the rights of the city. The evidence shows that the city attorney was fully authorized by formal action of the city council to employ the plaintiff; that he subsequently sent to the city council the correspondence

above appearing had between him and the plaintiff. This occurred in a letter under date of January 10, 1922, written to the council of the city of South Norfolk by the city attorney, Mr. Devaney, in which he made report upon various matters, and in regard to the payment to Mr. Wolcott he wrote as follows:

"I am also enclosing you a copy of the minutes of the board of supervisors of Norfolk county showing a proposed settlement together with a copy of a letter to the board refusing the payment as outlined at your last meeting by me. I will say in this connection that I have discussed the question of securing the services of an additional attorney to assist me in bringing about the settlement from my viewpoint as heretofore outlined to you, Mr. Harry K. Wolcott of the firm Wolcott, Wolcott, Lankford & Kear, and have in confirmation with your resolution, retained him for the sum of $500.00 cash retainer' fee and five per cent of the amount saved to your city and which may also be recovered from the county for you. Considering the probability of the lengthy litigation which will in all probability extend over a period of a year or more and may require us to finally appear in the court of appeals, I am of the opinion that the fee is very reasonable and feel assured that we should get some real benefits from the same; Mr. Wolcott is of the same opinion. I am herewith enclosing you a copy of my letter to him in regard to this matter together with his reply."

Various extracts from the minutes of meetings of the council of South Norfolk were put in evidence in support of the contention that the parties intended by the contract for Wolcott's services to confine the payment of the contingent fee of five per cent to such services as he should render in a suit regularly instituted and prosecuted to a final conclusion.

It is further shown that very promptly upon the employment of Mr. Wolcott and the confirmation by the city council of the agreement he made with the city attorney, the two attorneys prepared a bill in chancery setting out the controversy between the city and the county and asking for an injunction against the county, and that this chancery bill after being put in final shape between the two attorneys was presented to the president of the council for his signature in order that it might be filed in court. The two attorneys in their oral evidence both testified at considerable length as to their reasons for making preparation to institute litigation by preparing the bill, and they testified also in detail as to their reasons for adjusting the controversy and therefore not bringing suit. According to the testimony it is simply a case where the attorneys found that they could make an adjustment and settlement with the opponent of their client, which they thought just and fair and were willing to recommend to their client for acceptance. They further testified that the adjustment and settlement was made, which was embraced in a document of considerable length, and accepted by the council of South Norfolk.

[1] It is not necessary to transcribe here at length the minutes of the meetings of the council of South Norfolk put in evidence for two reasons. First, because the plaintiff was not a party to those proceedings and not bound by them, although they were admissible in evidence to show preliminary action on the part of the city council and the authority conferred by them on the city attorney, and also to show their subsequent action with reference to the arrangement made between the city attorney and the plaintiff, as well as the action taken by them on the settlement of the controversy made by the lawyers. In the next place, it may be conceded, and was conceded

in argument, that at the time of the transactions in question it was thought that it would probably be necessary to resort to legal proceedings in order to protect the city from what the city insisted were unreasonable claims against it on the part of the county.

The real contract between the parties to this present suit was in writing and consisted of two letters passing between the plaintiff and the city attorney. Under the evidence introduced at the trial as to the situation of the parties and as to the services to be rendered by the plaintiff, the contract appearing in the two letters is not clear and unambiguous. The city attorney in his letter speaks of proceedings which he has been instructed to take by the council of the city of South Norfolk in order to protect their interests in the settlement between the county and the city and he designates in his letter the points to be *adjudicated*; he states further that he was instructed to retain associate counsel in the case at such fees as might be agreed upon and which he, the city attorney, deemed reasonable and fair. He says to Mr. Wolcott that if the latter cares to be associated with him in the matter, he wishes him to give him an idea of what his fee would be, both in case they were to win the suit or in case they were to lose it; and that the city would expect to pay a larger fee if the matter was decided in its favor than it would pay if it was decided adversely to its interests. Fairly construed, the writer of such a letter had in mind the institution of a suit for the settlement of the matters mentioned. However, in Mr. Wolcott's reply he refers to the conversation had with the city attorney after the latter had written his letter, and Mr. Wolcott then says as to his fee that he should receive a cash retainer, and that "at the end of the controversy, or any litigation growing out of the same, I should have a contingent fee of five per cent of

any amount that we are able to save or recover for the city of South Norfolk." He also says in his letter that it seems to him that suit should be instituted at once and an injunction secured. There can be no question but that while Mr. Wolcott was prepared to take part at once in the necessary work for the institution of a suit and to proceed with a suit in court, yet he had in mind the possibility that the controversy might be terminated without litigation, and that in either event he should receive a contingent fee of five per cent.

[2, 3] Under these circumstances we think the trial court was clearly right in admitting oral testimony to clear up any possible ambiguity as to the meaning of the contract in the respects indicated and to submit the effect of all the testimony on this point to the jury. Ordinarily the construction or interpretation of a written contract is solely the function of the court, but it frequently occurs, especially in contracts to be deduced from correspondnece and not made by formal documents signed by the parties, that it is necessary to resort to parole evidence to ascertain the exact intention of the parties. In such cases the meaning of the contract upon the evidence should be submitted to the jury. As was said in the most recent case on this subject (*Geoghegan Sons and Co.* v. *Arbuckle Bros.* [Wytheville], June 1924, 139 Va. 92, 123 S. E. 387):

[4] "But where the language of a contract is not clear and unambiguous, a resort to extrinsic evidence is necessary. If the situation is such that fair minded men might reasonably draw different conclusions therefrom, then the construction of the contract is for the jury under proper instructions from the court, even though the evidence be not conflicting." See also *Turner* v. *Hall*, 128 Va. 247, 104 S. E. 861.

These two cases refer to other authority in this State and elsewhere.

In the instant case the court gave the following instruction to the jury:

"The court instructs the jury that if they believe from the evidence that the plaintiff was employed by the city of South Norfolk to perform certain services for said city, then the plaintiff is entitled to recover for such services such compensation as the jury may believe from all the evidence said city agreed to pay him in such contract of employment; or such compensation as the services were reasonably worth."

This was the only instruction given by the court and was not excepted to by either the plaintiff or defendant.

[5] In our opinion, therefore, the court did not err in refusing to grant the instruction asked for by the defendant. And from what has just been said we are further of opinion that the court did not err in allowing the testimony as to the oral conversation which took place between the city attorney and Mr. Wolcott between the time the first letter tendering the offer to Mr. Wolcott was written and the time his reply in writing was made; what passed between the parties at that time was essential to the clearing up of the ambiguity appearing in the two letters. It follows, therefore, that the assignments of errors Nos. 2 and 3 must be overruled.

[6] The only further error complained of is the failure of the court to set aside the verdict. Except as to one contention made by the defendant, it need only be said that the issue was submitted to the jury by an instruction not objected to by either side, and the rather voluminous evidence was amply sufficient to support the verdict of the jury. It is, however, insisted that the evidence plainly showed that the services to be rendered under the contract had not been entirely

completed, and for that reason the evidence was not sufficient to support a verdict for the plaintiff.

It appears in the evidence that the plaintiff introduced a contract of considerable length, embodying the final agreement brought about by himself and the city attorney, between the city of South Norfolk and the county of Norfolk which settled amicably all points of difference and terminated the controversy between them. They testified in detail as to the negotiations resulting in this contract, as to its drafting and as to what occurred between them and the authorities of the county of Norfolk, and both stated in their oral testimony that it was a complete and final settlement of the controversy in which the services of Mr. Wolcott had been engaged. The document as introduced in evidence was formally signed on behalf of the city of South Norfolk. Mr. Devany testified as follows:

"By Mr. Wells:

"Q. I will ask you if this agreement was signed by the city of South Norfolk?

"A. It was.

"Q. Was it signed on behalf of the county of Norfolk by the board of supervisors or anyone else?

"A. I don't know, sir. Mr. Carney took a copy of it to be signed and told me that as soon as he got in touch with the chairman of the board of supervisors—

"Q. It was agreed to?

"A. Yes; the terms were.

"Q. And you don't know whether it has actually been signed?

"A. No.

"Q. Did Mr. Carney as attorney for the county approve it?

"A. Yes, sir; and we reported it as a final settlement in making our reports to the bonding attorneys.

"Mr. Wells:   I will read the paper and introduce it in evidence.

"The Court:   If there is any difference between this copy and the other copy, is there any objection to deferring it?

"Mr. Wells:   I understand there is no material difference in it.

"The witness:   There is no material variation in it.

"Mr. Wells:   If there is, the original can be substituted.

"Mr. Martin:   It will be all right for him to put it in later.

"Mr. Wells:   I should think it would be necessary for him to read the paper at this time so that the jury may hear it.

"The Court:   Go ahead."

Mr. Thomas Black, who was chairman of the finance committee of the board of supervisors of Norfolk county, the sole witness for the defendant, testified as to various matters which took place between his committee and the attorneys and the committee from the council of the city of South Norfolk, and in his testimony he did not take the position that the adjustment or settlement between the city and county was not absolutely final. On the motion for a new trial the counsel for the city for the first time called attention to the fact that the agreement or settlement in evidence on its face appeared to be signed by the city of South Norfolk but not by any one on behalf of the county, and thereupon claimed that the plaintiff had failed to show that he had fully performed the services which he had agreed to render. We think there was sufficient evidence on that question to go to the jury, and the finding of the jury concluded further consideration of it. It does appear that after attention was thus drawn to the fact that the contract of settle-

ment had apparently not been signed on behalf of the board of supervisors of Norfolk county, the plaintiff filed an affidavit upon the argument on a motion for a new trial showing that subsequent to the trial the contract had been signed on behalf of the supervisors of the county. We do not think that this affidavit affects the consideration of the motion for a new trial, and if it is to be regarded at all it simply shows that the question is now a moot question.

Upon the whole case the opinion of the court is that no error was committed on the trial of this case to the prejudice of the plaintiff in error, and therefore the judgment of the lower court is affirmed.

*Affirmed.*