## Richmond

MAIN-ATLANTIC CORPORATION v. FRANCIS I. duPONT & COMPANY, ETC.

September 1, 1972.

Record No. 7851.

Present, Snead, C.J., I'Anson, Carrico, Harrison, Cochran and Harman, JJ.

*John F. Rixey* (*Rixey and Rixey*, on brief), for plaintiff in error.

*Francis N. Crenshaw* (*Crenshaw, Ware & Johnson*, on brief), for defendant in error.

I'ANSON, J., delivered the opinion of the court.

Main-Atlantic Corporation, a Virginia corporation, filed in the court below a motion for declaratory judgment against Francis I. duPont & Company, a/k/a Francis I. duPont, Glore Forgan & Co., a partnership, to determine whether a new five-year lease agreement on certain property in the City of Norfolk had been consummated through correspondence between the parties, and to declare that duPont was indebted to Main-Atlantic in an amount which represented the difference between rent paid under an old lease and that due under the new lease, and an additional sum of $3,000 under a separate agreement between the parties.

The trial court, based on answers to interrogatories submitted to a jury, entered its order holding that "no lease existed between the parties" and that Main-Atlantic recover of duPont the sum of $3,000.

Main-Atlantic's sole contention in oral argument before us was that the trial court erred in not holding as a matter of law that letters between the parties and the proposed lease Main-Atlantic sent to duPont constituted a new five-year lease of the property.

Main-Atlantic owns a two-story office building at the northwest corner of Main and Atlantic Streets in the City of Norfolk. Under a written lease, which began in 1963 and expired October 31, 1968, an area of approximately 2700 square feet on the first floor of the building was leased to duPont, a brokerage concern, at a monthly rental of $900. The lease provided that unless six months' notice was given by one of the parties to terminate before the end of the term, the tenancy would continue on a year to year basis with the same required notice of termination.

In the early part of 1968 duPont advised A. P. Grice, III, rental agent for Main-Atlantic, that it needed additional space in the building and that it would not renew its lease unless it was available. Discussions leading to obtaining the additional space followed between Grice and the local and New York representatives of duPont, and duPont remained on the property beyond the October 31, 1968, date as a yearly tenant. Approximately 1300 square feet of additional space became available to duPont sometime after July 31, 1969, when Main-Atlantic gave notice to one of its other tenants to vacate the space it occupied. While sketches were being prepared by an architect for changes in the physical layout of the approximately 4000 square feet, the parties had discussions as to the terms and conditions of the new lease. During the latter part of January 1970, and at about the time the bids were to be submitted for renovation of the space agreed upon, duPont notified Grice that it had decided not to take the additional space. Grice, who was ill at the time, then advised Thomas H. Willcox, Jr., an attorney and an officer of Main-Atlantic, of duPont's decision.

Thereafter, Willcox and duPont's New York representative, John W. Hicks, had many telephone conversations concerning the situation which had developed. On February 17, 1970, Willcox forwarded to Hicks a proposed new five-year lease, which was signed by Main-Atlantic, for the same space then occupied by duPont, effective February 1, 1970, together with an accompanying letter. Willcox's letter called attention to the rental increase to $5.00 per square foot and to clause 28, which gave the owner the option to terminate the lease on six months' notice under certain conditions. He stated that, except

for those two items, he believed all other terms were identical with the old lease of April 18, 1963. The letter also noted the following:

"We understand that you plan some repairs and refurbishing in your current space. The lease, of course, permits this and the owner will welcome it. This letter will serve as the owner's approval for such repairs and refurbishing provided, of course, they do not affect the structural integrity of the building or the plumbing system.

"Note also that the washroom area is not included in the demised premises. You have access to same, but not control over it. We believe your local manager is quite anxious to make some improvements in this area including possibly the installation of separate washrooms for men and ladies. As occupants of the adjoining space must also use the same washroom and as planned improvements may reduce the amount of rentable space in the adjacent area, any plans involving the repair, improvement or expansion of the washroom area must be specifically approved in advance."

On February 27, 1970, Hicks wrote Willcox the following letter:

"After our numerous telephone conversations regarding the lease situation in Norfolk, I have had the opportunity to discuss the matter with one of our managing partners and it is the feeling of the management that our recent offer to you was quite reasonable for several reasons:

"1. I was authorized to discuss with you some compensation for the fact that the 1233 square feet to the rear of our office had been vacant and might continue to be vacant for a period until a tenant can be located. We discussed a figure of $3,000.00 which in effect represents over seven months of rent.

"2. You have submitted to us a new five year lease calling for an effective date of February 1, 1970 at a monthly rental of $1,-101.67. As you and I discussed, if we enter into this lease, we are in effect willingly cancelling our present lease which expires October 31, 1970.

"As you know, I am fully aware of all the arguments on your side of the situation, and it would serve no useful purpose to discuss them in this letter. We do feel, however, that the above offer of $3,000.00

combined with the increased rental under the new lease represents a significant additional expense to be incurred by the Firm and therefore, I respectfully request that you review the situation with your principals and associates with a view toward accepting the arrangement as it presently stands. I am not authorized to exceed the $3,000.00 settlement.

"I trust that you realize that our actions throughout this matter have not been capricious, but have had as their basis the economic situation facing the entire industry. Although we wish to remain in Norfolk, we can only do so under an economically viable situation."

On March 4, 1970, Willcox wrote Hicks as follows:

"Receipt of your letter of February 27, 1970 is hereby acknowledged.

"We doubt that the financial plight of Francis I. duPont & Co., occasioned by a falling stock market and operational procedures, is any more difficult than that of Main-Atlantic Corporation, occasioned by Francis I. duPont & Co.'s unwillingness to follow through on an oral agreement on which Main-Atlantic Corporation has relied to its detriment. The $3,000 offer in your view represents seven months' rent on the space which you will not occupy whereas the same sum represents to the owners the additional rent lost during the past fifteen months during which you were permitted to occupy your original space without increase in rent to the $5.00 per foot figure.

"Be that as it may, we agree with you that no useful purpose can be served through further communications. Some of the principals are ill and are [sic] all are tired. We ask you to execute the lease and return it to us, together with a check in such amount, not less than $3,000, as you may deem equitable. You are further authorized to delete the paragraph providing for termination at owner's option under certain conditions as heretofore discussed."

By letter dated March 19, 1970, duPont advised Willcox that it would not sign the lease. On April 20, 1970, duPont gave written notice of its intent to cancel the 1963 lease as of October 31, 1970, the expiration date of the second renewal period, and subsequently moved to another location in the City of Norfolk.

Willcox testified that Hicks requested the elimination of clause 28, giving Main-Atlantic the right to terminate the new lease on the old space on six months' notice, since duPont expected to make some

improvements and did not want to be notified to vacate six months later; that in return therefor duPont would pay Main-Atlantic $3,000 as a cash settlement; that he advised Hicks that he thought $6,000 would be more equitable but that he would take the matter up with his principals; and that Hicks told him that he had talked to his superiors and had gotten their approval to go ahead with the deal involving the new lease on the old space at the new rate and to pay Main-Atlantic $3,000 to eliminate clause 28.

Hicks testified that the $3,000 offer to Main-Atlantic was to compensate it for the loss of rent for the additional space duPont decided not to lease. It had no connection with the execution of the new five-year lease. He said that he told Willcox on numerous occasions that he did not have authorization to execute the new lease.

Where a written agreement, whether it is contained in a single document or evidenced by several writings, is clear and unambiguous it is the duty of the court to determine whether a contract exists. And where extraneous testimony which is properly admitted does make an agreement clear and unambiguous it is also the duty of the court to determine the question. But where the true meaning of the terms of the agreement is unclear and ambiguous and depends upon extraneous testimony the effect of which may cause fair minded men to arrive at different conclusions, the question is one for the jury. *Geoghegan* v. *Arbuckle Bros.*, 139 Va. 92, 100, 101, 123 S.E. 387, 389 (1924); *City of South Norfolk* v. *Wolcott*, 140 Va. 611, 622, 125 S.E. 687, 690 (1924).

Main-Atlantic says that Hicks' letter of February 27, stating that the $3,000 offer when combined with the increased rental which it would incur by entering into the new lease, representing a "significant additional expense to be incurred by the Firm," amounted to an offer by duPont to enter into the lease. It thus argues that Willcox's letter of March 4, accepting the offer on behalf of Main-Atlantic shows that the minds of the parties had met and that the trial court erred in not holding as a matter of law that a new five-year lease had been consummated.

We think that the Hicks letter of February 27 is unclear and ambiguous. The language of the first paragraph referring to "our recent offer" could be construed to mean an attempt on Hicks' part to get Main-Atlantic to accept $3,000 as settlement for duPont's rejection of the additional space it had orally agreed to take, and that the settlement offer was being negotiated separate and apart from the

lease. In paragraph number "2" we find the language "if we enter into this new lease." The language "our recent offer," read in light of the language "with a view toward accepting the arrangement as it presently stands" in the next to the last paragraph, could be construed to refer only to the stage of negotiations concerning compensation for the vacant space, and no more. It does not clearly appear from the language relied upon by Main-Atlantic that duPont would have entered into the new lease if Main-Atlantic accepted the $3,000 settlement.

It is apparent from Willcox's letter of March 4 that he considered the removal of clause 28 from the lease as another element of duPont's "recent offer." Yet no mention of any such request was made in Hicks' letter of February 27.

There was apparent disagreement on matters other than clause 28 of the lease which were not clarified by the letters of February 27 and March 4. Those matters appear in Willcox's letter of February 17, wherein reference was made to the desire of duPont's local manager to construct another "washroom," as well as the financial responsibility for the refurbishing of the premises.

Looking beyond the letters and to the testimony of the witnesses, we find a direct conflict not only in regard to what stage of the negotiations was represented by the letter of February 27 but also in regard to the purpose of the $3,000 settlement.

Hence we cannot say that the trial court erred in not holding as a matter of law, from Hicks' letter and Willcox's acceptance of du-Pont's "recent offer" and the testimony of the witnesses, that the minds of the parties had met and that the letters and proposed lease, when read together, constituted a binding new five-year lease.

Accordingly, the judgment of the court below is

*Affirmed.*