859 F.2d 149
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
BALLAST NEDAM GROEP, N.V., Plaintiff-Appellant,
v.
COMPUTER SCIENCES CORPORATION, Defendant-Appellee.
 No. 87-3187.
 United States Court of Appeals, Fourth Circuit.
 Argued July 5, 1988.
Decided Sept. 19, 1988.
 
 James Aubrey Pemberton, Jr. (Paul E. McNulty, King & King, Chartered on brief) for appellant.
 Millard F. Ottman, Jr. (Robert D. Sweeney, Jr., Jones, Day, Reavis & Pogue on brief) for appellee.
 Before HARRISON L. WINTER, Chief Judge, and MURNAGHAN and SPROUSE, Circuit Judges.
 PER CURIAM:
 
 
 1
 Ballast Nedam Groep, N.V. (Ballast) appeals the judgment of the district court dismissing its breach of contract action against Computer Sciences Corporation (CSC). This is the second time we have reviewed this action. In our prior decision,[1] we reviewed the district court's judgment which dismissed the action on the ground that the parties had agreed to a Saudi Arabia forum for resolution of contract disputes. It held as a matter of law that the parties had agreed that CSC was to have the option of selecting Saudi Arabia as the forum and that it had exercised that option. On review, however, we held that the contractual language was ambiguous and remanded the case for consideration of parol evidence to determine the parties' intent regarding choice of forum. On remand, the district court, after receiving parol evidence, again dismissed the action because it found the parties intended CSC to have its choice of forum. Ballast now challenges that decision, arguing that it is unsupported by the evidence. We agree. In addition, we find that the contract as clarified by parol evidence requires that the dispute be governed by the contract's arbitration provision.
 
 
 2
 In 1981, Ballast and CSC contracted for Ballast to perform construction work on a project for CSC in Saudi Arabia. Among the contract's terms was a provision requiring CSC to make partial payments upon the completion by Ballast of various parts of the project referred to as "milestones." Another provision called for CSC to reimburse Ballast for certain customs duties paid on imported materials. The contract contained the following provisions relevant to the settlement of disputes:
 
 
 3
 22.1 All claims, disputes and other matters in question between the Contractor and the Company arising out of, or relating to, the Contract documents or the breach thereof, shall at the sole discretion of the Company be decided either under applicable Saudi Arabia law and procedure or by arbitration in accordance with the Rules of Arbitration and Conciliation then obtaining of the International Chamber of Commerce. In the event the Company chooses arbitration, the arbitrator(s) shall apply the substantive laws of the Commonwealth of Virginia, U.S.A., in interpretation of the Contract. The Contractor shall carry on the Works and maintain its progress during any arbitration proceedings, and the Company shall continue to make payments to the Contractor in accordance with the Contract.
 
 
 4
 22.2 Arbitration shall be held in Paris, France.
 
 
 5
 22.3 The language of the arbitration proceedings shall be English.
 
 
 6
 24.17 The Contract shall be governed and interpreted in accordance with the substantive laws of the Commonwealth of Virginia, United States of America.
 
 
 7
 In 1986, Ballast filed suit in the United States District Court for the Eastern District of Virginia, alleging that CSC had failed to make the milestone payments as required by the contract and to reimburse Ballast for customs duties. Ballast sought to recover the funds owing, exemplary damages, and finance costs which it asserted it was forced to incur because of CSC's failure to make the scheduled payments. In the alternative, Ballast asked the court to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. Sec. 4, as provided for in the contract. CSC responded by moving to dismiss the action. It argued that a federal court in Virginia was an improper forum because the contract provided CSC with the option to choose a Saudi forum.
 
 
 8
 When the action was originally before it, the district court found that paragraph 22.1 is a choice of forum clause. Because it also found the paragraph to be "clear on its face," it refused to consider parol evidence on the parties' intentions concerning choice of forum. It held that paragraph 22.1 gave CSC the option to choose a Saudi forum, and since it found CSC had exercised that option, it dismissed the suit. On appeal from the dismissal, we examined the disputed language and observed:
 
 
 9
 When read alone, or even against the clause, quoted ante [paragraph 24.17], making Virginia law the parties' choice, clause 22.1 is hopelessly ambiguous on its face. Although it clearly refers to international arbitration as one choice by CSC for dispute resolution, it nowhere mentions the words court, forum, arbitration, or any other like language in connection with Saudi Arabia in a way unambiguously demonstrating that a Saudi forum choice was given contractually to CSC.
 
 
 10
 Ballast Nedam Groep, No. 86-3134, slip op. at 4. Accordingly, we remanded the case to the district court to conduct an evidentiary hearing and to determine the parties' contractual intentions.
 
 
 11
 On remand, testimonial evidence and affidavits established that agents of the parties discussed paragraph 22.1 in a meeting held in Virginia and again just prior to the signing of the contract in Saudi Arabia. Four representatives participated in the meetings: Bernard Kral, a Ballast employee who served as Ballast's chief contract negotiator; Mr. Griffith, an employee of a contract management firm under contract to Ballast; Stanley Forbes, an employee of CSC who served as CSC's chief negotiator; and William Kline, another CSC employee. Kral and Kline testified at the hearing, and both Ballast and CSC submitted affidavits from Forbes who was no longer in CSC's employ at the time of the hearing.
 
 
 12
 At the hearing, Ballast relied on the Forbes affidavits and Kral's testimony.[2] Forbes stated in his affidavit that he recalled discussing at the meetings "what contractual issues or possible disputes would be covered by United States law and which would be subject to applicable Saudi Arabia law and procedure." According to Forbes, the parties agreed that,
 
 
 13
 as the construction work was to be performed in Saudi Arabia, certain activities related to contract performance, such as employment and compensation of direct labour, social insurance requirements, safety, permits, traffic and other police regulations, would be necessarily be [sic] governed by the applicable laws of Saudi Arabia. Any questions or disputes that might arise with respect to such matters, or as a direct consequence of the requirements of the law of Saudi Arabia, would therefore be settled or decided under applicable Saudi Arabia law and procedure. With respect to the types of issues or disputes that might arise between the parties under any construction contract, such as interpretation of the requirements of the plans and specifications, payments for work performed, claims for changed or extra work, design defects or deficiencies, etc., I advised Mr. Kral that such disputes or issues would be decided under the law of Virginia, United States of America.
 
 
 14
 Forbes also stated, "I do not recall any specific discussion ... with respect to where or how the resolution of disputes or claims of either party that would be covered by Virginia law would take place." Kral testified that he generally agreed with Forbes' account, but added that their agreement extended not only to the type of law that would apply to various kinds of disputes but also to the forum in which the disputes would be settled. Thus, local regulatory matters would be resolved under Saudi law in Saudi courts, while disputes relating to the interpretation and performance of the contract would be settled under Virginia law outside Saudi Arabia. Kral testified that the parties discussed and agreed to this interpretation of the contract:
 
 
 15
 [W]e explained quite clearly how we had read this article. And when CSC confirmed they had read it in the same way, our fear of ending up for all kinds of matters in a Saudi court were disappeared [sic]. So, we said, fine, gentlemen, we have no objection.
 
 
 16
 According to Kral, he explained Ballast's interpretation of paragraph 22.1 at both meetings, and Forbes agreed with it on both occasions.
 
 
 17
 CSC presented testimony by Kline and by CSC's president, Thomas Robinson. Kline provided no helpful testimony concerning the parties' discussions at the meeting, stating only that he did not recall ever having discussed paragraph 22.1 with any Ballast representative. Both Kline and Robinson, however, testified that CSC always intended to reserve for itself the option of choosing a Saudi forum. They stated that CSC had a longstanding policy of matching the terms of subcontracts to those in the general contract to which the subcontract related. They explained that their construction contract with the Saudi Ministry of Interior, of which their agreement with Ballast was a part, subjected them to dispute resolution in Saudi Arabia. They testified that they therefore had wanted to have the option of resolving in the same Saudi forum any contractual disputes with Ballast related to their project for the Saudi government. Robinson and Kline each testified to internal communications in which CSC officers discussed their intention to reserve the choice of a Saudi forum for any and all claims, and they documented their testimony with minutes and memoranda. CSC presented no evidence, however, that its intention to reserve to itself the choice of a Saudi forum for all disputes was ever communicated to Ballast.
 
 
 18
 In reviewing the evidence, the district court relied heavily on the testimony of Kline and Robinson concerning CSC's intent. It accepted CSC's explanation that paragraph 22.1 was written specifically to conform the forum for dispute resolution to that established for disputes arising out of CSC's contract with the Saudi government. In regard to Ballast's intentions, the district court found that Ballast "understood clause 22.1 could subject [Ballast] to having all disputes resolved in Saudi Arabia," but "never took exception to this possibility." The court concluded that the evidence showed the parties always intended CSC to have its choice of forum, and it again dismissed the action.
 
 
 19
 The district court's opinion rests on two significant errors. First, in determining the parties' mutual intentions, it relied on evidence concerning internal discussions between CSC employees and the resulting policy determinations made by CSC's executives that were never communicated to Ballast. Second, it misconstrued Kral's testimony. The court stated that Kral's testimony showed he understood that the contract might subject Ballast to a Saudi forum for all disputes but failed to object. Kral testified, however, that he was concerned about what paragraph 22.1 meant, and so he explained Ballast's interpretation "quite clearly" to Forbes. He testified that "when CSC confirmed they had read [paragraph 22.1] in the same way, [Ballast's] fear of ending up for all kind of matters in a Saudi court were disappeared [sic]." Kral's testimony was not directly challenged by any of the other persons who attended the meetings, and it unequivocally demonstrated that Ballast understood it would not be forced to submit its contractual disputes to resolution in a Saudi forum.
 
 
 20
 The district court's interpretation of the parol evidence to determine the parties' intentions was, of course, a factual determination. See Combs v. Dickenson-Wise Medical Group, 355 S.E.2d 553, 557 (Va.1987); Main-Atlantic v. Francis I. duPont & Co., 191 S.E.2d 211, 215 (Va.1972). We conclude, however, that the district court's findings were clearly erroneous. The only evidence in the record concerning the parties' mutually expressed intentions is the testimony of Kral and Forbes. Kral testified that he explained to Forbes and Kline that Ballast understood paragraph 22.1 to provide for settlement of disputes concerning local regulatory matters in Saudi Arabia and for settlement of all substantive contractual disputes under Virginia law outside Saudi Arabia. According to Kral, Forbes agreed that this was also CSC's understanding, and Kline at least offered no objection. While Forbes could not recall discussing where resolution of disputes under Virginia law would occur, his testimony concerning what types of issues would be settled under Virginia law matched Kral's, and he did not contradict Kral's testimony regarding the limited types of issues for which a Saudi forum would be used. Thus, the only direct evidence concerning whether the parties intended that CSC could choose to have substantive contractual disputes litigated in Saudi Arabia was Kral's testimony.
 
 
 21
 In addition to being uncontroverted, Kral's testimony is supported by the other relevant evidence. Both Forbes and Kral agreed that the parties intended substantive contractual issues to be resolved under Virginia law, and paragraph 24.17 specifically states that the contract "shall be governed and interpreted in accordance with the substantive laws of [Virginia]." The only mention of the possibility of applying Saudi law is in paragraph 22.1, and even CSC's negotiator, Forbes, testified that in discussing that paragraph the parties agreed that they intended Saudi law to apply only to local regulatory matters. While Forbes' statement is not an explicit declaration that the parties reached a similar agreement regarding the use of a Saudi forum, we think the statement supports Kral's testimony that the parties in fact reached this agreement.[3]
 
 
 22
 We think the evidence relating to the parties' intention of choosing a Saudi forum vel non is susceptible to only one interpretation--that they intended to utilize a Saudi forum for resolution of local matters, but they specifically rejected the Saudi forum for resolution of substantive contract disputes. The contract, thus clarified by parol evidence, can only be interpreted as expressing an agreement to resolve such contract disputes by arbitration. Paragraph 22.1 provides that disputes shall be resolved "either under applicable Saudi Arabia law and procedure or by arbitration in accordance with the Rules of Arbitration and Conciliation then obtaining of the International Chamber of Commerce." Parol evidence established that the reference to Saudi Arabia law and procedure related only to local Saudi Arabia matters. The only language remaining in the contract susceptible of interpretation as other forum selection language refers to resolution of substantive disputes by arbitration under the rules of the International Chamber of Commerce.
 
 
 23
 The parties were given the opportunity to present all of their evidence relating to their intentions on the meaning of the language they used in paragraph 22.1 of their contract. They apparently have done so, and no useful purpose would be served by further adversarial proceedings in the district court. Because the only provision in the contract regarding the resolution of disputes, other than those disputes involving local matters to be governed by Saudi law, provides for arbitration--we conclude that the parties intended to settle the type of claims presented in this case in arbitration utilizing the substantive law of Virginia.
 
 
 24
 Accordingly, we reverse the judgment of the district court and remand with instructions that it issue an order, pursuant to 9 U.S.C. Sec. 4, directing the parties to submit their dispute to arbitration as provided by paragraphs 22.1-22.3 of their contract.
 
 
 25
 REMANDED WITH INSTRUCTIONS.
 
 
 
 [1]
 Ballast Nedam Groep, N.V. v. Computer Sciences Corp., No. 86-3134 (4th Cir. June 16, 1987) (unpublished)
 
 
 [2]
 Although the Forbes affidavit submitted by Ballast was slightly more detailed than the one submitted by CSC, the two affidavits by Forbes were substantially the same
 
 
 [3]
 We also note that the uncontroverted evidence in the record, consisting of the affidavit of a Saudi law expert submitted by Ballast pursuant to Fed.R.Civ.P. 6(d), reflects that "No Saudi Arabia court would adjudicate claims ... on the basis that" the contract would be governed by Virginia law